285 So.2d 148 (1973)
Bernice THOMAS
v.
STATE of Mississippi.
No. 47495.
Supreme Court of Mississippi.
November 12, 1973.
Ramsey, Bodron & Thames, Vicksburg, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
Bernice Thomas, the Appellant, was jointly indicted with Johnny L. Chapman, Harriett Cannon, Bobbie Nell Hughes and Edna E. Robinson for grand larceny. A severance was granted and Bernice Thomas was tried at the November, 1972, term of the Circuit Court of Warren County. The jury returned a verdict of guilty, and appellant was sentenced to serve a term of four years in the Mississippi State Penitentiary.
About Noon, Saturday, May 13, 1972, four black women, two of whom were dressed in white uniforms, one in an aqua green uniform and one in a yellow uniform, entered Jitney Jungle No. 2 on U.S. Highway 61, south of Vicksburg, Mississippi. There were three checkout stands at the front of this supermarket. The appellant inquired of Shirley Dement, the cashier at cash register No. 2, as to the location of lemon ammonia. Mrs. Dement left her checkout stand and walked down an aisle with the appellant. There was no lemon ammonia on the shelf.
As Mrs. Dement turned to go back to her cash register, appellant inquired as to whether lemon Joy was the same as lemon ammonia, and after Mrs. Dement explained the difference, appellant asked about Knox gelatin. Mrs. Dement asked the assistant manager to show appellant where the *149 Knox gelatin was, and she returned to her checkout stand.
Appellant bought a box of Knox gelatin at checkout stand No. 3 operated by Helen McKenzie. During this entire time checkout stand No. 1 was unattended, Shirley McDuff, the operator, having gone to the back of the store. When she returned to her checkout stand, she immediately discovered that about $900.00 had been taken from cash register No. 1.
Willie Nicholson, Jr., a 19-year-old bag boy for the store, had noticed the four uniformed women when they entered and when they left. All four had left in a two-tone green Plymouth Fury, with a Rankin County license tag and driven by a black male.
The store manager telephoned the sheriff of Warren County and gave him a description of the car, the four women and the driver. The sheriff dispatched his deputy, Ed Reed, to Jitney Jungle No. 2 to get further details about the theft. In the meantime, Sheriff Barrett put out a description of the car and the occupants over the police radio.
A short time later, the Mississippi Highway Patrol advised Sheriff Barrett that Patrolman Martin had stopped a car fitting the description and occupied by four uniformed women and one man on Interstate No. 20 just east of Clinton. Sheriff Barrett, Deputy Reed and Mrs. Shirley Dement arrived at the stopped Plymouth Fury a short time later, and Mrs. Dement immediately identified the four uniformed women as being the four who were in Jitney Jungle No. 2.
Under questioning by Sheriff Barrett, Harriett Cannon, one of the four uniformed women, took out a wad of bills from her brassiere. The money was immediately counted and the total was $914. The serial numbers of a five dollar bill, a ten dollar bill and a twenty dollar bill placed in cash register No. 1 that Saturday morning had been recorded by the store manager, Joyce Jones, and these marked bills were found in the $914.00 recovered when it was recounted at the Warren County jail.
The four women, including the appellant, and Johnny Chapman, the only male, were taken to the Warren County jail. Harriett Cannon there told Sheriff Barrett that the money belonged to all of them and that they had made it as prostitutes in New Orleans. Sheriff Barrett asked each, including the appellant, if that were true, and the appellant testified that she and the others all nodded their heads.
Bernice Thomas contends that Harriett Cannon had the money, that she (Bernice) knew nothing about the plan to rob, did not aid or assist Harriett Cannon, and just happened to be in the getaway car before and after the robbery, just happened to be in the store when it was robbed, and that it was just a case of guilt by association.
The only assignments of error that we need notice are:
1. It was error to allow Willie Nicholson, Jr. to testify about an extrajudicial identification of appellant by him at the Warren County jail;
2. It was error to permit the county attorney to comment on the pretrial silence of the defendant in his argument to the jury, and in failing to grant defendant's motion for a mistrial because thereof; and
3. The trial court erred in failing to instruct the jury to disregard the comments made by the district attorney in his closing argument when he told the jury that those persons who had been indicted with Defendant but who had been tried separately had all been held accountable for their actions and Defendant should be held accountable *150 for hers, and that it was error for the court to overrule the defendant's motion for a mistrial.
At the trial, Shirley Dement testified that the appellant was the one who had inquired of her about lemon ammonia, lemon Joy, and Knox gelatin, and that she was facing her during most of this time. Mrs. Dement's identification of appellant was based on her observation of her in the store. Helen McKenzie positively identified the appellant as the one who purchased a box of Knox gelatin for 30 cents at her checkout stand.
V.P. Martin, Mississippi Highway Patrol, testified that the appellant was driving the Plymouth Fury at the time he stopped it for speeding on Interstate 20, and that he gave her a traffic ticket for speeding. Appellant was also identified by Sheriff Barrett and Deputy Sheriff Reed.
In fact, the appellant herself took the stand and, under questioning by her own counsel, freely admitted that she was the one who had inquired about the lemon ammonia, lemon Joy and Knox gelatin; that she was the one who had purchased a box of Knox gelatin in Jitney Jungle #2; that she was the one driving the car at the time it was stopped by the highway patrolman for speeding; that she did agree when questioned at the Warren County jail that they had made the money as prostitutes in New Orleans. Appellant further testified under questioning by her own attorney:
"Q. What happened then when you got to the jail in Vicksburg?
"A. Well, as the sheriff was asking us our names and everything, he asked us where the money come from. So Harriet told him we had got the money from prostituting in New Orleans, and the story about we caught a bus and all of this. So he said something to the effect, `Is that what all you all have to say?' So we all nodded our heads.
"Q. Is that where the money came from?
"A. No, sir.
"Q. Had you all been prostituting in New Orleans?
"A. No, sir.
"Q. Did you come up by bus?
"A. No, sir.
"Q. Do you know where the money came from?
"A. I do now.
"Q. Did you then?
"A. No sir, I didn't.
"Q. Why did you then make that statement?
"A. Because I really  I didn't know what I had got myself into. And I figured I had better stick with what the crowd said. I didn't know what any of them would do to me if I would squak, or you know, just  give any kind of statement at all. I didn't say anything until I could get to my lawyer or somebody that could tell me something. I shouldn't have said anything at all. I shouldn't have even nodded my head now."
Appellant admitted that she was picked up in Jackson by Johnny Chapman, Edna Robinson and the others about 8:30 that morning.
All that Willie Nicholson, Jr. said about the appellant was that she arrived in the car with the others, was in the Jitney Jungle and left in the car with the others. There was no issue about this. Appellant freely admitted all of this under questioning by her own counsel. In addition, Shirley Dement, Helen McKenzie, Deputy Sheriff Ed Reed and Sheriff Paul Barrett *151 all positively identified her after proper predicate had been laid. So the extrajudicial identification of the appellant at the jail by Willie Nicholson Jr., as being one of the four women in the Jitney Jungle, was pure surplusage and harmless error.
The cross-examination of the appellant by the State, after she had voluntarily taken the stand in her own defense and after she had admitted that her previous statement was untrue and after she had attempted to explain it away, was legitimate cross-examination, and not a comment on her pretrial silence.
The closing arguments were not taken down and transcribed, but the remarks of the district attorney objected to by the appellant were expressed in this way in the bill of exceptions:
"Bernice Thomas is in this with all the rest of them. They were working together to steal this money. They had an agreement between each other. Don't let her break her contract with the others. They are all in it together and should each be held accountable. Make the Defendant accountable like Johnny Chapman, the driver, has already been made accountable and like Edna Robinson and Bobbie Nell Hughes has been made to account for their actions."
The bill of exceptions then recites:
"Whereupon Counsel for Defendant objected to the comments made by the District Attorney on the grounds that such comments violated her due process rights and equal protection of the laws granted under the United States Constitution; that such statements violated the spirit as well as the law dealing with severances, which have been granted to all the Defendants indicted for this alleged offense; that it gives the Jury information about the disposition of other cases which disposition is not in the record and was inflammatory and highly prejudicial. At the time that this objection was made, the Defendant also made a Motion for a mistrial.
"Whereupon the Trial Court sustained the objection to the comments and admonished the District Attorney not to make additional comments about the others who were jointly indicted or the disposition of their cases; but the Trial Court overruled the Defense Motion for a mistrial."
The trial judge appended to the bill of exceptions an explanation of why he ruled as he did on the closing remarks of the district attorney and the motion for mistrial. Over his signature, the trial judge said:
"As regards that portion of the Bill of Exceptions attributing certain language to the District Attorney, it is readily apparent from the `Answer to Proposed Bill of Exceptions' that a dispute exists as to exactly what was said. Since the Court felt that State counsel was getting close to a possible comment upon the disposition of charges as to other Defendants, the Court sustained the objection and admonished the District Attorney that the Defendant on trial had been granted a severance, as was her right, and to refrain from any comment as to any disposition of cases against the codefendants. However, the Court declined to grant the Motion for Mistrial.
"All in all, the case was vigorously prosecuted, and equally vigorously defended. Counsel for Defendant had strenuously argued that responsibility for the theft belonged solely to Harriett Cannon, a co-defendant who had jumped bail, explicit attention to which was called by defense counsel. The District Attorney countered by arguing for the guilt of all. The jury was well equipped with the facts, the case having been fully developed, and regardless of which of the two versions is the accurate one, the Court did not, and does not, feel that a *152 Mistrial was justified. It seems to the Court that the State's argument was directed to the principle as announced by the Supreme Court in the very recent case of Shows vs. State, 267 So.2d 811 (Oct. 16, 1972), to the effect:
"`The appellant was a principal in the crime of armed robbery. He was positively identified as one of the three actively engaged in the robbery. All three acted jointly and in concert; each was responsible and accountable for the wrongful actions of the other two. ([Ivey v. State] 232 So.2d at 369).'"
The District Attorney should not have commented that the co-indictees had been held accountable, but the trial judge, in putting these remarks in context, sheds light on the court's ruling. The trial judge sustained the defendant's objection to the remarks of the district attorney and admonished the district attorney "that the Defendant on trial had been granted a severance, as was her right, and to refrain from any comment as to any disposition of cases against the co-defendants." The appellant did not ask the trial judge to instruct the jury to disregard the remarks of the district attorney and not to consider those remarks in arriving at a verdict, as a defendant usually does. Be that as it may, we think that his admonition to the district attorney was, to all intents and purposes, an instruction to the jury to disregard his remarks and not to consider them in arriving at their verdict. Under the peculiar circumstances and posture of this case, we think that the trial judge was correct in overruling the motion for a mistrial.
The conviction and sentence are affirmed.
Affirmed.
RODGERS, P.J., and SMITH, SUGG and BROOM, JJ., concur.