# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-KA-01682-SCT

*CHARLES RAY CRAWFORD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/1993 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLIVE A. STAFFORD SMITH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JIM HOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/26/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/17/2001 |

### BEFORE PITTMAN, C.J., AND COBB AND DIAZ, JJ.

### COBB, JUSTICE, FOR THE COURT:

¶1. Charles Ray Crawford is before this Court appealing the judgment of the Lafayette County Circuit Court based on a jury verdict which found him guilty of aggravated assault after a four day trial. On May 21, 1993, the circuit judge sentenced Crawford to twenty (20) years in the custody of the Mississippi Department of Corrections. No post trial motions were filed at that time, and no appeal taken. On March 11, 1996, Crawford filed a pro se Motion for Appointment of Counsel but he did not pursue that motion, and the record does not reflect that any ruling was ever made on the motion. However, more than five years after Crawford was sentenced, attorney David O. Bell filed, on behalf of Crawford, a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial. In the motion counsel stated "Defendant sought new court-appointed counsel, and undersigned counsel was appointed" and "Defendant requests that the present motion be considered by this Court *nunc pro tunc*." No mention was made of the motion being out-of-time, nor was any explanation given for the delay of more than five years. The trial judge found that the motion for new trial was not timely filed and was not properly before the circuit court. He further found that the time had also expired for Crawford to file for post-conviction relief, and thus could not be properly before the court even if it had been brought under the Post Conviction Relief Act. He then found that notwithstanding the fact that the motion was not properly before the court, he would, at Crawford's request (and over the State's objection) consider the Motion for JNOV or new trial as if it had been timely filed. Then "after hearing testimony and argument from counsel on the merits of said motion, the court finds that there are no grounds which would warrant the granting of a JNOV or a new trial" and denied the motion. Crawford filed a notice of appeal to this Court, raising the following issues:

### I. WHETHER THE TRIAL COURT ERRED IN RULING THAT CRAWFORD WAS

**COMPETENT TO STAND TRIAL?**

**II. WHETHER THE TRIAL COURT ERRED IN FAILING TO CONTINUE THE COMPETENCY HEARING UNTIL DEFENSE EXPERTS COULD REVIEW CRAWFORD'S POST-SEIZURE MEDICAL RECORDS AND RE-EXAMINE HIM?**

**III. WHETHER THE JURY'S VERDICT THAT CRAWFORD WAS SANE WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

**IV. WHETHER ADMISSION OF EVIDENCE THAT CRAWFORD HAD RAPED WITNESS KELLY ROBERTS, DEPRIVED CRAWFORD OF A FUNDAMENTALLY FAIR TRIAL?**

**V. WHETHER JURY INSTRUCTIONS S-2, S-7-A, S-5 AND S-6 WERE FLAWED TO THE EXTENT THEY SHOULD NOT HAVE BEEN GIVEN?**

**VI. WHETHER IT WAS REVERSIBLE ERROR FOR THE PROSECUTORIAL TEAM TO MAKE CRAWFORD'S IMPENDING RELEASE FROM A MENTAL INSTITUTION A CONSTANT THEME IN THE CASE?**

**VII. WHETHER THE TRIAL COURT ERRED IN FAILING TO EXCUSE FOR CAUSE JURORS SHERRY SAM AND CONSTANCE PARHAM?**

**VIII. WHETHER THE PROSECUTION VIOLATED THE RULES OF DISCOVERY TO CRAWFORD'S DETRIMENT?**

**IX. WHETHER THE TRIAL JUDGE ERRED IN DECLINING TO SEQUESTER THE JURY?**

**X. WHETHER THE TRIAL JUDGE ERRED IN ADMITTING INTO EVIDENCE TWO COLOR PHOTOGRAPHS DEPICTING THE VICTIM'S SUTURED HEAD WOUND?**

**XI. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE CERTAIN ITEMS SEIZED DURING A SEARCH OF CRAWFORD'S HOME?**

**XII. WHETHER THE CUMULATION OF ERROR REQUIRES REVERSAL EVEN IF INDIVIDUAL ERRORS DO NOT?**

¶2. Within the State's brief, as a single sentence at the end of its statement of facts, the State simply stated that " [f]or whatever reason, Crawford's appeal appears to be out-of-time, and the State of Mississippi, as a part and parcel of this brief, hereby moves to dismiss his appeal." Then the State's argument addressed the merits of the issues set forth by Crawford, without further mention of the timeliness issue.

¶3. This Court finds that the Circuit Court Judge was correct in his decisions regarding the timeliness of Crawford's post trial motions, and we affirm the trial court's judgment in that regard.

¶4. In addition, we have also addressed the merits of the issues raised by Crawford, and find his assignments of error to be without merit.

## FACTS

¶5. On April 13, 1991, Nicole Cutberth, a sixteen-year-old high school student was struck four times on the back of the head with a framing hammer. Charles Ray Crawford was indicted for aggravated assault by a Tippah County Grand Jury on December 10, 1991. Crawford claimed he was incompetent to stand trial, and that even if he were competent, he was insane under the *M'Naghten* standard when the crime was committed.

¶6. Crawford did indeed have a history of mental problems. From as early as six years of age, Crawford experienced hallucinations, black-out spells, periods of falling out and uncontrollable fears. He had twice been admitted to mental hospitals.

¶7. A competency hearing was held the morning of the trial. Crawford testified that he could not aid his lawyer in his case and could not meaningfully participate in his defense because of medication he had been taking following two recent seizures. The State produced Dr. Reb McMichael who testified that he and Dr. William Lott had interviewed Crawford for an hour and twenty minutes that morning and found him to be competent to stand trial.

¶8. The trial court judge found as a fact and concluded as a matter of law that Crawford "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; that he has a rational as well as factual understanding of the proceedings against him . . . ." and that Crawford was thus competent to stand trial.

¶9. Five witnesses testified on behalf of the State during its case-in-chief, including the victim, Nicole Cutberth, and her companion on the day of the attack, Kelly Roberts, the defendant's sister-in-law. Cutberth identified Crawford as her assailant. Roberts testified during re-direct, over the defendant's objection, that she was raped by Crawford minutes before he walked out of the house and struck Nicole Cutberth in the head with the hammer.

¶10. At the close of the State's case-in-chief, the defendant moved for a directed verdict of acquittal "on the grounds [the] State has failed to prove a *prima facia* [sic] case for the crime of aggravated assault. They may have, in fact, established a *prima facia* [sic] case for the crime of simple assault." The trial judge denied the motion.

¶11. Crawford produced only one witness, Dr. L. D. Hutt, a Memphis clinical psychologist, who testified that, in his opinion, Crawford was suffering from a bipolar disorder, manic type at the time of the attack. Hutt stated "that given the psychiatric history and my findings that he did not have the ability to differentiate between right and wrong and conform his behavior to the dictates of the law at that time." Thus, Crawford was *M'Naghten* insane at the time of the crime.

¶12. The State produced two witnesses in rebuttal, Dr. Reb McMichael and Dr. William Chris Lott, who both testified that Crawford was sane at the time he struck Nicole Cutberth with a claw hammer. At the close of the evidence, Crawford's renewed motion for a directed verdict was overruled.

¶13. Following closing arguments, the jury retired to deliberate and forty minutes later, returned with a verdict of guilty of aggravated assault. The trial judge immediately sentenced Crawford to serve twenty years in the custody of the Mississippi Department of Corrections. Taking exception with the proceedings below, Crawford now appeals to this Court.

<u>**DISCUSSION**</u>

### I. WHETHER THE TRIAL COURT ERRED IN RULING THAT CRAWFORD WAS COMPETENT TO STAND TRIAL?

¶14. The legal standard for determining competency is well-settled in Mississippi. "A defendant not competent to stand trial is one who does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or does not have a rational as well as factual understanding of the proceedings against him." ***Gammage v. State***, 510 So.2d 802, 803 (Miss. 1982). *See also **[Dusky v. United States](#)***, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). "[T]he court is concerned with a defendant being physically and mentally able to confer with his counsel as to the merits of the case . . . . [H]e should be able to comprehend his position and to participate rationally in his defense." ***May v. State***, 398 So.2d 1331, 1333 (Miss. 1981) (quoting ***Jaquith v. Beckwith***, 248 Miss. 491, 157 So.2d 403 (1963)).

¶15. This Court has further developed the test for competency to be one requiring that a defendant be one:

> (1) who is able to perceive and understand the nature of the proceedings;

> (2) who is able to rationally communicate with his attorney about the case;

> (3) who is able to recall relevant facts;

> (4) who is able to testify in his own defense if appropriate; and

> (5) whose ability to ratify the foregoing criteria is commensurate with the severity and complexity of the case.

[*Howard v. State*](#), 701 So.2d 274, 280 (Miss. 1997) (quoting ***Conner v. State***, 632 So.2d 1239, 1248 (Miss. 1993)).

¶16. Crawford raises two sub-issues regarding his competency.

> *(a) Did Crawford's extensive psychological history, inability to meaningfully communicate with counsel or recall necessary facts, coupled with his experts' [sic] testimony, conclusively established his incompetency?"*

¶17. Crawford experienced problems as early as the age of six when he would "experience visual hallucinations, . . . periods of falling out, [and] blackout spells that would last anywhere from a few minutes to a half hour . . . ." Crawford was first treated by a psychiatrist at age ten and was prescribed phenobarbital medication.

¶18. Crawford's first in-patient psychiatric treatment began in 1989 after he attempted suicide and was admitted to East Mississippi State Hospital. There he underwent six weeks of testing and "[t]he discharge diagnoses were bipolar disorder, manic type or manic phase, and substance abuse by history." He was prescribed Desyrel, an antidepressant, and Lithium carbonate, a mood stabilizer. Two years later, only a few weeks before he assaulted Nicole Cutberth, Crawford was admitted to Memphis Mental Health Institute for two weeks where he was again diagnosed as having a bipolar disorder.

¶19. In addition, Crawford suffered a seizure a few months before trial and was treated at Aberdeen Hospital. He subsequently suffered a second seizure and less than two weeks before trial he was treated at Aberdeen Hospital and at Northeast Mississippi Medical Center. There Crawford was prescribed Dilantin, an anti-epileptic/anti-seizure medication. Thus, at the time of trial he was taking both Lithium and Dilantin.

¶20. At the competency hearing, Crawford presented Affidavits from Dr. Lemly David Hutt and Dr. Mark C. Webb, both of whom expressed concerns about the effect of the Dilantin on Crawford's competency to stand trial. However, the Prosecution produced Dr. Reb McMichael, who testified in person that Crawford was competent to stand trial. Dr. McMichael was asked about the effect of both the Lithium and the Dilantin on Crawford's competency to stand trial. Regarding the Lithium, McMichael testified the levels "have barely been therapeutic or lower than therapeutic; and I would not expect Lithium, itself, would have any effect on his ability to understand his legal situation and consult with an attorney."

¶21. Concerning the Dilantin, Dr. McMichael testified that since the dosage level was 100 milligrams three times a day, "I would not expect that that would interfere with his ability to consult with his attorney. That opinion is further bolstered by the fact that, as you mentioned, this is the fourth time that I've seen him."

¶22. At the conclusion of the competency hearing, the trial judge made specific findings of fact in ruling that Crawford was competent to stand trial. There is substantial credible evidence to support the trial judge's conclusions. Therefore, this argument lacks merit.

### *(b) Was the one hour and twenty minute interview of Crawford conducted by Dr. McMichael on the day of trial sufficient to determine his competency?*

¶23. Crawford describes the interview that morning as "shoddy." Crawford criticizes McMichael for not adequately reviewing Crawford's post-seizure medical history and failing to conduct tests on Crawford or wait for other test results before reaching a conclusion. Thus Crawford argues McMichael's expert testimony should have been disregarded by the trial court. However, as noted earlier, this Court will defer to a finding by a trial judge that is supported by "substantial credible evidence" *Sills v. State*, 634 So.2d 124, 126 (Miss. 1994), and is not "clearly erroneous." *Neal v. State*, 451 So.2d 743, 753 (Miss. 1984). Thus this issue is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN FAILING TO CONTINUE THE COMPETENCY HEARING UNTIL DEFENSE EXPERTS COULD REVIEW CRAWFORD'S POST-SEIZURE MEDICAL RECORDS AND RE-EXAMINE HIM?

¶24. The day prior to trial, a Motion for Determination of Competency, requesting "such hearing on a future date and time calculated to allow [Appellant's] counsel and medical experts to obtain and analyze his recent medical reports and treatment." The trial court granted the motion, in part, conducting a competency hearing, but refused to continue the trial. Crawford argues the denial of a continuance constituted a "manifest injustice."

¶25. The denial of a continuance is not an issue reviewable on appeal where the denial of the continuance is not assigned as a ground for a new trial in the defendant's post-trial motion for a new trial. On motion for a new trial, "certain errors must be brought to the attention of the trial judge so that he may have an opportunity to pass upon their validity before this court is called upon to review them." *Metcalf v. State*, 629 So.2d 558, 561-562 (Miss. 1993) (citing *Weyen v. Weyen*, 165 Miss. 257, 139 So. 608 (1932).

"For example, the denial of a continuance in the trial court is not reviewable unless the party whose motion for continuance was denied makes a motion for a new trial on this ground." *Metcalf* at 562, (citations omitted). *See also [Morgan v. State](#)*, 741 So.2d 246, 255 (Miss. 1999); *Jackson v. State*, 423 So.2d 129 (Miss. 1982); *Colson v. Sims*, 220 So.2d 345, 347 n.1 (Miss. 1969).

¶26. Crawford's "Motion for Judgment Notwithstanding the Verdict or, In the Alternative, For a New Trial" contains twelve numbered entries and several claims, none of which addresses the denial of a continuance. Thus, this issue is procedurally barred.

### III. WHETHER THE JURY'S VERDICT THAT CRAWFORD WAS SANE WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶27. Crawford argues the overwhelming weight of the evidence supported his insanity defense. In Mississippi, the determination of insanity at the time of the offense is controlled by the *M'Naghten* test; "whether the defendant was unable to distinguish right from wrong at the time the act was committed." *Roundtree v. State*, 568 So.2d 1173, 1181 (Miss. 1990)(quoting *White v. State,* 542 So.2d 250,252 (Miss. 1989)).

¶28. Crawford contends that the expert testimony of his psychologist provided sufficient proof of insanity. Dr. L. D. Hutt testified that Crawford was insane at the time of the crime, basing his testimony on his examination of Crawford and Crawford's extensive mental health records, a battery of psychological tests, and collateral interviews with Crawford's ex-wife and mother.

¶29. The State countered Dr. Hutt's testimony with two rebuttal witnesses, Dr. Reb McMichael and Dr. Chris Lott, both of whom testified Crawford was not *M'Naghten* insane. Crawford criticizes the validity of their testimony. However, the question of a defendant's sanity is for the jury, which "may accept or reject expert and lay testimony." *Tyler v. State*, 618 So.2d 1306, 1309 (Miss. 1993). "Given the fact that there is testimony on both sides of the issue - - a jury's verdict on the insanity issue is essentially conclusive and unreviewable."*Gerlach v. State*, 466 So.2d 75, 79 (Miss. 1985). This Court has recognized that "institutional and practical considerations mandate that in insanity defense cases, perhaps more than any other, a jury's verdict ought to be given great respect and deference." *Groseclose v. State*, 440 So.2d 297, 301 (Miss. 1983).

¶30. Thus it cannot be said that the jury's verdict was against the overwhelming weight of the evidence. Consequently, this issue is without merit.

### IV. WHETHER ADMISSION OF EVIDENCE THAT CRAWFORD HAD RAPED WITNESS KELLY ROBERTS, DEPRIVED CRAWFORD OF A FUNDAMENTALLY FAIR TRIAL?

¶31. Crawford argues he was deprived of his right to a fundamentally fair trial by the trial judge's failure to declare a mistrial after the prosecution elicited testimony concerning a separate charge of rape against him. The rape of witness Kelly Roberts occurred on the same day as the attack of Nicole Cutberth. However, the State chose to try the case separately.

¶32. The relevant questioning of witness Kelly Roberts occurred as follows:

Q. You were asked [during cross-examination] did he ever threaten you with the gun and your

response was, "No[t] any more." When had he threatened you with the gun?

A. Back at the house in Chalybeate.

Q. What did he do to you with the gun at the house in Chalybeate?

A. He held it up to my head and told me to be quiet.

Q. After he held the gun to your head and told you to be quiet -

A. - and do what he said.

Q. All right, then you were asked [during cross examination,] "He gave you the gun and told you to shoot him."

A. Yes, sir.

Q. Why was Chuck Crawford asking you to shoot him? What had he done that he wanted you to shoot him for?

By Mr. Pannell: Objection. He's asking her to probe into his mental processes, also trying to avoid the previous ruling of this Court.

By the Court: Ask your question again, Mr. Robinson.

Q. What had Chuck Crawford done that was so bad he was asking you to shoot him?

A. He raped me.

By Mr. Pannell: Object.

By the Court: Jury will be admonished to disregard the response of the witness; and stay away from that area, Mr. Robinson.

By Mr. Pannell: Your Honor, we ask for a mistrial.

By the Court: Overruled. Let's go. Jury is admonished to disregard the question and the answer.

¶33. Crawford claims this line of questioning constituted prosecutorial misconduct and that the trial judge erred by not granting Crawford's motion for a mistrial. However, Crawford's brief does not include any legal authority to substantiate this assignment of error.

¶34. The State's brief offers three reasons why the testimony was admissible:

1) to show motive for the assault under Miss. R. Evid. 404 (b)

2) "it is the general rule that where, as here, the defense of insanity is raised, the door is thrown wide open for the admission of evidence"

3) Crawford "opened the door" during his cross-examination of Kelly Roberts.

The most compelling of these is that Crawford's attorney opened the door on cross-examination. We find that the judge did not abuse his discretion by refusing to grant a mistrial. "The failure of a judge to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its [judicial] discretion." *Bass v. State*, 597 So.2d 182, 191 (Miss. 1992). In addition, the trial judge immediately admonished the jury to disregard the question and answer. Also, Jury Instruction C.01, which likewise instructed the jury to disregard all evidence excluded by the Court, further protected the defendant from any harm related to the questioning. Because the trial judge did not abuse his discretion, this assignment of error is without merit.

### V. WHETHER JURY INSTRUCTIONS S-2, S-7-A, S-5 AND S-6 WERE PATENTLY ERRONEOUS AND SHOULD NOT HAVE BEEN GIVEN?

¶35. Crawford first challenges the legal basis for the jury instructions concerning the insanity defense. Specifically, instruction S-2 is objected to on appeal. However, the defense did not object to the instruction at trial. In fact, the record clearly demonstrates the defense assisted the court in amending S-2. Defense counsel also expressly stated "[w]ith those corrections made we have no objection to S-2." In order to preserve a jury instruction issue on appeal, a party must make a specific objection to the proposed instruction in order to allow the lower court to consider the issue. *Morgan v. State*, 741 So.2d 246, 253 (Miss. 1999); *See also* **Watson v. State**, 483 So.2d 1326, 1329 (Miss. 1986). Consequently, Crawford may not now object to S-2 on appeal.

¶36. The other insanity instruction to which objection was made on appeal is S-7-A. This instruction was initially refused by the trial judge, but was granted upon modification of the original proposed instruction S-7. Once the modification was made, Crawford's counsel did not object. Thus, Crawford may not now object to Instruction S-7-A.

¶37. Crawford also objects to S-5 and S-6, the companion instructions concerning flight, instruction S-5 was not objected to at the trial court. Instruction S-6 was objected to at the trial court as duplicative of S-5. On appeal, Crawford's objection is on the basis that it was error for the court to instruct the jury concerning an inference of guilt from the flight of the defendant. This Court does not need to reach the merits of this argument because an objection on one or more specific grounds constitutes a waiver of all other grounds. *Stringer v. State*, 279 So.2d 156, 158 (Miss. 1973). Thus neither the insanity instruction nor the flight instructions may be challenged on appeal, and this assignment of error is without merit.

### VI. WHETHER IT WAS REVERSIBLE ERROR FOR THE PROSECUTORIAL TEAM TO MAKE CRAWFORD'S IMPENDING RELEASE FROM A MENTAL INSTITUTION A CONSTANT THEME IN THE CASE?

¶38. Crawford argues that "[a]dded to the other error, this court should reverse appellant's conviction since the prosecution made appellant's impending release from the mental hospital a constant theme in the case." Crawford notes several statements he deems improper. However, none of these statements were objected to at the trial court. Thus, "the point was waived in the court below and is deemed forfeited on appeal to this Court."*Box v. State,* 610 So.2d 1148, 1154 (Miss. 1992) (citations omitted). A contemporaneous objection is necessary to preserve complaints concerning allegedly prejudicial comments made by a prosecutor. *Edwards v. State*, 737 So.2d 275 (Miss. 1999); *Manning v. State*, 735 So.2d 323 (Miss. 1999); *Watts v. State*, 733 So.2d 214 (Miss. 1999); *Weatherspoon v. State*, 732 So.2d 158 (Miss. 1999); *Skinner v. State,* 726 So.2d 272 (Miss. Ct. App.1998). Thus, this assignment of error is without merit.

## VII. WHETHER THE TRIAL COURT ERRED IN FAILING TO EXCUSE FOR CAUSE JURORS SHERRY SAM AND CONSTANCE PARHAM?

¶39. Crawford argues the trial judge erred in failing to dismiss for cause two of the jurors, Sherry Sam and Constance Parham. He claims that both jurors demonstrated a bias in favor of police officers as witnesses. Crawford's brief cites relevant case law that potentially substantiates his argument; however, neither juror was challenged for cause in the trial court. In fact, Crawford's counsel specifically accepted both of them as jurors. Thus neither juror may be challenged at this level. *Evans v. State*, 725 So.2d 613 (Miss. 1997); *Jaco v. State*, 574 So.2d 625 (Miss. 1990). This assignment of error is without merit.

## VIII. WHETHER THE PROSECUTION VIOLATED THE RULES OF DISCOVERY TO CRAWFORD'S DETRIMENT?

¶40. Crawford argues that the trial judge erred when he refused to strike testimony from the forensic scientist Sheila Browning concerning her testing of hair samples taken from the defendant and Kelly Roberts. The only objections made during Browning's testimony were to the court's qualification of Browning as an expert witness and to testimony concerning the hair on the basis that the "hairs are the result of a warrant-less search." When such a specific objection is made, other grounds for objection are waived. *Stringer v. State*, 279 So.2d 156, 158 (Miss. 1973).

¶41. Then, at the conclusion of Browning's testimony, even after the jury had been excused, Crawford made the following request:

> Your Honor, I have something before I make the normal motions in this case. The witness just testified that there have been exclusive tests run from this hair and known samples of the defendant and the witness Kelly Roberts. I've been searching through these reports that I was provided in discovery from the defendant, and I don't find anything in them about any exclusive tests. That's been done and its not been provided on discovery. . . . If it hasn't been done, she's mistaken in her testimony. If she's mistaken about that, she could be mistaken about everything. I would ask her entire testimony be excluded and the jury be admonished to disregard it.

The circuit judge denied the request.

¶42. Crawford did not specifically ask the judge to rule there was a discovery violation and failed to avail himself of the procedure for such violations, which was outlined by this Court in the *Box-Traylor* guidelines:

> 1. Upon defense [or State] objection, the trial court should give the defendant [or prosecution] a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.

> 2. If, after this opportunity for familiarization, the defendant [or State] believes he may be prejudiced by lack of opportunity to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.

*Traylor v. State*, 582 So.2d 1003, 1006 (Miss. 1991).

¶43. Crawford failed to request the opportunity to familiarize himself with the evidence or to request a

continuance. Rather the focus of his request was a belief that Browning might have been "mistaken." Such a general objection to testimony is not sufficient to preserve grounds for appeal. *Coley v. State*, 378 So. 2d 1095, 1097 (Miss. 1980). Any objections Crawford wished to make should have been made at specific points during the testimony in order for the trial judge and the appellate court to properly rule on the objections. As a result, this issue is waived on appeal, and this assignment of error is without merit.

### IX. WHETHER THE TRIAL JUDGE ERRED IN DECLINING TO SEQUESTER THE JURY?

¶44. Crawford argues the trial judge committed reversible error by refusing to sequester the jury due to the extensive media coverage. Crawford argues that the potential for "tainting the jurors was at least equal to that of his pending capital case." Sequestration is required, under [Rule 10.02 of the Uniform Rules of Circuit and County Court Practice,](#) in a case where the State seeks to impose the death penalty. However, in other cases, the jury may or may not be sequestered "in the exercise of sound judicial discretion." Id.

¶45. The State points out the fact that the trial judge's refusal to grant the sequestration motion is less damaging to Crawford than would otherwise be the case, due to the change of venue from Tippah County to Lafayette County. In addition, the trial judge admonished the jurors prior to every recess with regard to improper contact and conduct. Thus, there is not sufficient evidence that the trial judge abused his discretion in refusing to grant Crawford's sequestration motion. This assignment of error is without merit.

### X. WHETHER THE TRIAL JUDGE ERRED IN ADMITTING INTO EVIDENCE TWO COLOR PHOTOGRAPHS DEPICTING THE VICTIM'S SUTURED HEAD WOUND?

¶46. Crawford cites [Rule 609(a) of the Mississippi Rules of Evidence](#) in arguing that the trial court erred in admitting two photographs taken of the victim after her release from the hospital. Crawford objected and argues now that the photographs were highly prejudicial and should have been excluded.

¶47. The State counters that the photographs were innocuous and had probative value. The State argues the photographs were admissible to show the nature and extent of the bodily injury; significant because "bodily injury" is a necessary element of the crime of aggravated assault. *See* Miss. Code Ann. § 97-3-7(2)(b). The State also contends "[t]he photographs were admissible to show the location of the wound to the victim's head and the severity of the blows." In addition, the State argues that the photographs were admissible to help clarify the testimony of the victim, Nicole Cutberth. She testified the photographs "fairly and accurately depicted [her] condition after [she] [was] released and [was] at home." Photographs have evidentiary value where they supplement or clarify testimony of a witness. *Westbrook v. State*, 658 So.2d 847 (Miss. 1995).

¶48. "The trial court is granted broad discretion in ruling on the admissibility of photographs." *Gossett v. State,* 660 So.2d 1285, 1292 (Miss. 1995). A decision favoring admissibility will not be disturbed on appeal absent a clear abuse of discretion. *Noe v. State*, 616 So.2d 298 (Miss. 1993). Crawford does not provide any support for a finding of abuse of judicial discretion. Therefore, this assignment of error is without merit.

### XI. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE CERTAIN ITEMS SEIZED DURING A SEARCH OF CRAWFORD'S HOME?

¶49. Crawford argues that the two searches of Crawford's home were unconstitutional searches and that

any items, such as the hammer, that were obtained through the search are inadmissible as fruit of an illegal search. The first search occurred the day of the attack. Three of the officers who had responded to the call concerning the attack immediately went to Crawford's home after Nicole Cutberth told the police that Crawford had Kelly Roberts at his house nearby. The officers conducted a protective sweep. The officers discovered there was not anyone present at the home. Greg Hopper, a Tippah County deputy sheriff, testified "[w]e immediately entered the residence because we felt that there was still a crime in progress. . . . [w]e made a thorough search of the residence by going through one room at that time." Hopper also testified as to what items were discovered and collected as evidence from Crawford's residence during the protective sweep:[1]

> Some of the items were rolls of duct tape, or one roll of duct tape that I remember. Also there was tape, other tape around the house that had what appeared to be hair fibers on them. Outside the residence also in the yard was duct tape with hair fibers. On the bed was where there was blood stains on the bed. Also a female Kotex was on the bed. There was some green, leafy substance in the, I believe in the hallway; a marijuana cigarette, which was also in the hall way or what appeared to be a marijuana cigarette.

¶50. The State contends this search was lawful under the "emergency" or "exigency" doctrine that would allow for a warrantless search under certain narrowly defined circumstances. The requirements of this exception are as follows:

> (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize the evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Smith v. State*, 419 So.2d 563, 570 (Miss. 1982).

¶51. The record reflects the officers entered the home believing Kelly Roberts to be in danger and that their action was necessary to protect Roberts' life. The officers had just been told Roberts was in the home with Crawford not long after Crawford had just inflicted great bodily harm to Cutberth. The officers only seized evidence in plain view and did not open drawers or do an in-depth search for evidence.

¶52. The day after the attack, Deputy Hopper went to Crawford's home looking for Crawford. Hopper testified that he had received a telephone call earlier that day "that Mr. Crawford had been seen going back into the residence." Hooper testified as to what then occurred:

> Myself and Scott White responded to the call; and at the time of arrival his grandfather, which is Mr. Dewey Crawford, was outside; and we asked him at that time if he had seen Chuck. He advised us no; and we asked him at that time if we could be allowed to go through the residence and look for Mr. Crawford; and he advised us yes, we could.

¶53. The officers went through the home and out the back door. Hopper was crossing the garden headed to another house "where [Crawford] apparently parked the truck the day before." Hopper happened to stumble across a hammer, the hammer that was used in the crime. On appeal Crawford argues that the grandfather did not have authority to give consent to the officers because the home was Crawford's and not

the grandfather's. Indeed, at trial, Crawford made the following objection to testimony concerning the hammer: "unless he establishes a predicate that either asserts warrant or permission to make the search, I don't believe its admissible." Yet in arguing the objection Crawford conceded that Hopper "had permission to look and see if Mr. Crawford was on the premises." Because Hopper was on the premises with permission, the hammer (which was the only physical evidence introduced at trial) was legally obtained by the police. "Any information obtained by means of the eye where no trespass has been committed in aid thereof is not illegally obtained." *Franklin v. State*, 587 So.2d 905, 907 (Miss. 1991), (quoting *Patterson v. State,* 413 So.2d 1036,1038 (Miss. 1982)). *See also Waldrop v. State*, 544 So. 2d 834, 839 (Miss. 1989). This assignment of error is without merit.

## XII. WHETHER THE CUMULATION OF ERROR REQUIRES REVERSAL EVEN IF INDIVIDUAL ERRORS DO NOT?

¶54. Crawford argues that this Court should order a new trial, even if it finds that any single error committed by the trial court was not sufficient to mandate reversal, because the overall or cumulative effect would be to deny Crawford "fundamental fairness." *See Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983), *Stringer v. State,* 500 So.2d 928, 946 (Miss. 1986); *Hickson v. State*, 472 So.2d 379, 385-86 (Miss. 1985); *Edwards v. State*, 413 So.2d 1007 (Miss. 1982); *Collins v. State*, 408 So.2d 1376, 1380 (Miss. 1980). However, the State counters that where "there was no reversible error in any part, . . . there is no reversible error to the whole." *McFee v. State,* 511 So.2d 130, 136 (Miss. 1987). We find that there is not cumulative error in this case and that a new trial is not warranted. Thus, this assignment of error is without merit.

## CONCLUSION

¶55. The trial court did not err with regard to any of the issues raised by Crawford. The record supports the decisions made by the trial judge and those made by the jury. In four areas, the issues raised by Crawford were procedurally barred. Thus, the judgment of the Tippah County Circuit Court is affirmed.

¶56. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN AN INSTITUTION TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR.**

1. It should be noted the items seized on this day were not entered as physical evidence at the trial court.