544 So.2d 834 (1989)
Ray M. WALDROP, a/k/a David Ray Walters
v.
STATE of Mississippi.
No. 58483.
Supreme Court of Mississippi.
May 17, 1989.
*835 J.P. Coleman, Ackerman, Gene Stringer, Louisville, for appellant.
Mike Moore, Atty. Gen., by John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
This case was first before this Court in Waldrop v. State, 506 So.2d 273 (Miss. 1987). This Court held that the appellant's conviction for the manufacture of methamphetamine, a Schedule II drug pursuant to § 41-29-115 Miss. Code Ann. (Supp. 1988), should be reversed for a new trial, largely on the grounds of ineffective assistance of counsel. Id. at 276. The second trial was held in the Circuit Court of Leake County; Waldrop was again convicted of the crime of manufacturing methamphetamine and sentenced to thirty (30) year term in the Department of Corrections without probation or parole. On appeal to this Court, he assigns as error the following:
(1) The consent to search the trailer signed by Mary Lube was invalid.
(2) Waldrop has standing to challenge the legality of the consensual search of the trailer.
(3) The police officers trespassed on Waldrop's land in order to gain access to the trailer.
(4) The trial court erred in admitting into evidence the substance found on the property in front of the trailer.

FACTS

I.
For purposes of this appeal, the facts at issue are largely the same as those contained in the first opinion, as follows:
On September 14, 1984, Leake County Sheriff Joe Mack Thaggard and four state criminal investigators, arrested Ray M. Waldrop on a parole violation, pursuant to a teletype from the National Crime Information Center, (NCIC). Prior to the arrest, police also had information that Waldrop was an acquaintance of an area resident, Mary Lube, and ran a drug laboratory.
A few hundred yards from the arrest scene, a home construction site, police passed a mobile home where Lube's automobile had previously been seen parked in the drive. Louisiana State Police reported that the mobile home, owned by Lube, was Waldrop's residence before its move to Mississippi in August, 1984. On the day of the arrest, police again passed the mobile home from which emanated a "terrible odor", similar to ether, a compound *836 in the manufacture of methamphetamine.
See Waldrop v. State, 506 So.2d 273 (Miss. 1987).
Only a few hundred yards from the arrest scene was a mobile home, at which Mary Lube's car had been parked. The windows of the mobile home were covered with aluminum foil and there were no electric or water lines running from the mobile home. On the day of the arrest, police passed the mobile home and noticed that a terrible odor seemed to be coming from it. The smell coming from the trailer appeared to be ether, a compound used in the manufacture of methamphetamine.
Following Waldrop's arrest, he claimed that the trailer belonged to Mary Lube although he possessed the keys. Following the receipt of this information, Deputy Bobby Brown transported Lube to the sheriff's office, where she was given her Miranda warnings. Following the giving of these warnings, she signed a consent form to search the trailer. The police claimed that at this time they did not consider Ms. Lube to be under arrest. It is also true however, that she was transported to the sheriff's office in a patrol car.
Having obtained Mary Lube's consent to search the trailer, the police entered the mobile home, finding various laboratory equipment as well as five doughy balls, resembling biscuit dough in consistency. These balls contained methamphetamine that had been manufactured within the prior 24 hour period. Waldrop admitted to the police that he had been in the mobile home as recently as three hours prior to his arrest, and 6 hours prior to the search. He denied that there had been any laboratory equipment or odor present at that time. Expert testimony at trial revealed that the 5 balls were indeed methamphetamine, and furthermore, the glassware and other objects found in the trailer were sufficient to manufacture methamphetamine. An amount of gray powdery material visible to the naked eye was found on the ground approximately 20 feet from the trailer and was identified at trial as being a by-product resulting from the methamphetamine manufacturing process. After all testimony was heard, the appellant was once again convicted of the manufacture of methamphetamine, a controlled substance, in violation of Miss. Code Ann. § 41-29-115 (Supp. 1988). He received a thirty (30) year sentence in the Mississippi State Penitentiary pursuant to Miss. Code Ann. § 41-29-139(b)(1) without parole, suspension or reduction as a habitual offender, pursuant to § 99-19-81 of Miss. Code Ann. (Supp. 1988).

ANALYSIS

WAS THE CONSENT TO SEARCH THE MOBILE HOME GIVEN BY MARY LUBE INVALID?
On remand from this Court, an extensive hearing was held in the trial court on the appellant's motion to suppress the result of the search of the mobile home. The proof presented in that hearing revealed that at about 1:30 p.m. on the afternoon of September 14, 1984, Sheriff Thaggard began searching for the appellant to arrest him for a parole violation. The sheriff and several other officers searched the area around the mobile home but were unable to find the appellant. At that time however, they noticed a strong smell emanating from the trailer, which seemed to be ether. The officers then drove to a house located approximately 200 yards from the trailer. The appellant was seen walking away from the house and placed under arrest; he was also advised of his Miranda rights at this time. When asked about the trailer, the appellant told the officers that Mary Lube owned it, and gave them a key to the trailer.
At about 2:00 p.m. Deputy Bobby Brown was instructed by Thaggard to ask Mary Lube to come to the police station to speak to Thaggard. Lube agreed to accompany Brown to the police station and Brown testified that he did not force her to go with him, nor did he threaten her or promise anything to her in order to obtain her consent to see Thaggard. She was also not placed under arrest at that time. At the police station, Lube admitted she owned the trailer and signed a written consent *837 form, allowing the officers to search the trailer. Several other officers corroborated Brown's version of this story at the suppression hearing and at trial. It is also true that Lube was later arrested, put in jail and kept overnight until bail could be supplied. However, she was never indicted or prosecuted for her involvement in the appellant's crimes.
It appears from the appellant's brief that the source of his claim that the consent given by Mary Lube was invalid is the fact that she had been arrested without probable cause. This Court holds that the appellant does not have standing to question Ms. Lube's arrest. The U.S. Supreme Court has held that Fourth Amendment rights are personal rights and may not be asserted vicariously. In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the U.S. Supreme Court held that standing to invoke Fourth Amendment rights requires a finding that the proponent of the rights has an alleged injury in fact, and that the proponent is asserting his legal rights and interests rather than basing his claim for relief upon the rights of third parties. This Court has adopted this view. See Ware v. State, 410 So.2d 1330, 1331, 1332 (Miss. 1982). If Mary Lube had been prosecuted for a crime arising from the events which transpired in this case, she certainly would have standing to litigate this issue. However, the appellant possesses no such right, due to the fact that the right involved is a personal one belonging to Mary Lube only. The cases cited by the appellant in his brief are not persuasive, for the simple fact that in each of those cases the appellant was asserting a challenge based on his or her own Fourth Amendment rights, rather than those of someone else. Therefore, these cases provide no support for the appellant's position.
The trial court held that the appellant had no standing to litigate this issue. However, had the court ruled on the merits of the claim presented under this assignment of error, it is the opinion of this Court that there was sufficient proof before the court to show that Mary Lube was neither under arrest nor in custody at the time she executed the consent to search. It is also undisputed that the trailer in question belonged to her; therefore, she had every reason and right to consent to a search of her own property. She also testified at trial that at no time did the officers threaten, promise or use any other form of inducement or intimidation to secure her consent to search the trailer. It is therefore the opinion of this writer that there is no merit to this assignment of error.

DID THE APPELLANT HAVE STANDING TO CHALLENGE THE LEGALITY OF THE CONSENSUAL SEARCH OF THE TRAILER?
When the appellant was arrested, he denied ownership of the trailer. In fact, he told police officers that Mary Lube owned the trailer. When questioned, Lube admitted this was true. It has long been the law in this state that if a person denies ownership or possession of property, he later has no standing to complain that the search of it was unlawful. See Watkins v. State, 262 So.2d 422, 423, 424 (Miss. 1972), Ball v. State, 194 So.2d 502, 503 (Miss. 1967). It is entirely arguable that discussion of this assignment of error should end at this point, since the appellant appears to have no standing to litigate the issue.
Assuming for the moment that the appellant does have standing to litigate this point, it is the opinion of this Court that his claim should nonetheless fail for the reason that Mary Lube was possessed with sufficient authority to consent to a search of the trailer. As noted earlier, it is quite clear that Mary Lube owned the trailer in question and that title to it was still in her name. It is well settled under the law of this state that a person who possesses common authority with another over premises to be searched may validly give consent for a search as against the other. Shaw v. State, 476 So.2d 22, 23, 24 (Miss. 1985); Loper v. State, 330 So.2d 265, 267 (Miss. 1976). It thus is quite clear that Mary Lube had the authority to grant a consent to search the trailer, rendering moot the issue of whether or not the appellant had standing to complain about the search of the trailer. In light of the fact that Mary *838 Lube was possessed of sufficient authority to consent to a search of the trailer, it is the opinion of this Court that this assignment of error is without merit.

DID THE POLICE OFFICERS TRESPASS ON THE APPELLANT'S LAND IN ORDER TO GAIN ACCESS TO THE TRAILER?
Under this assignment of error Waldrop maintains that the law enforcement officers illegally trespassed on his land by crossing it in order to search the trailer. During the motion to suppress, the evidence showed that Mary Lube was in possession of a deed of a conveyance for real estate describing 1.2 acres of land in Leake County, on which the trailer rested. The grantor of the deed was one George Busby; the grantee was the appellant. The date of execution for the deed was August 29, 1984. However, the deed was unrecorded until November 14, 1984. Mary Lube was in possession of the deed while she was at the sheriff's office; the description in the deed was used to describe the premises for the consent to search.
No testimony was presented to show that the deed had ever been delivered to the appellant or that he had ever accepted it. When there is no delivery of a deed to the grantee, no title passes to him. Carothers v. Carothers Estate, 227 Miss. 659, 662, 86 So.2d 855, 856 (1956). Additionally, if there is no acceptance of the deed by the grantee, no title passes to him. See Mississippi State Highway Commission v. Sanders, 269 So.2d 350, 351 (Miss. 1972). Thus, an argument can be made that the appellant has no standing to challenge the presence of the police officers on the property on which the mobile home rested.
Assuming once again that the appellant does have standing to address this issue, his claim fails anyway. Waldrop maintains that since the property on which the mobile home rested belonged to him, the officers trespassed on his land in order to reach the trailer to search it. His claim apparently is that this trespass renders the fruits of the search invalid. This Court disagrees.
Legal commentators have written that police officers do have rights of access to certain portions of private property.
It is not objectionable for an officer to come upon that part of the property which `has been open to public common use.' The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take that route `for the purpose of making a general inquiry' or for some other legitimate reason, they are `free to keep their eyes open,' and thus it is permissible for them to look into a garage or similar structure from that location.
1 W. Lafave, Search and Seizure, § 2.3 p. 318 (1978).
This same commentator continues in a similar vein:
Thus, when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.
Id. at 323. See also U.S. v. Clancy, 285 F. Supp. 98, 99 (S.D.Miss. 1968); People v. Houze, 387 N.W.2d 807, 811, fn. 1 (Mich. 1986).
Thus, it would appear that police officers are specifically allowed the right of ingress and egress onto private property, particularly under the circumstances we have in this case i.e., where consent to search the trailer in question has been given by the owner. For this reason, this Court is of the opinion that there is no merit to this assignment of error.

DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE THE SUBSTANCE FOUND ON THE PROPERTY NEAR THE TRAILER?
After carefully reviewing the record in this case, it is this Court's opinion that the powdery substance found approximately 20 feet from the trailer clearly falls under the plain view doctrine as addressed by the U.S. Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The U.S. Supreme *839 Court held in that case that where the initial intrusion brings the police within the plain view of an article and is not supported by a warrant, the seizure is nonetheless legitimate if one of the recognized exceptions to the warrant requirement is present. This Court has held on several occasions that a valid consent to a search is a recognized exception to the warrant requirement. See Whittington v. State, 523 So.2d 966, 973 (Miss. 1988); Hudson v. State, 475 So.2d 156, 157-158 (Miss. 1985); Jackson v. State, 418 So.2d 827, 830 (Miss. 1982).
Once consent to search the trailer was given by Mary Lube, the police were justified in seizing any evidence found pursuant to that search within their plain view. As noted earlier, the powder in question was located approximately 20 feet from the east side of the trailer. Although it could not be seen from the road, it was clearly visible from the trailer itself. No evidence was presented to contradict this testimony.
In light of the fact that Mary Lube gave a valid consent to search the trailer, that the police were validly on the property on which the trailer was located and since the powdery substance was easily visible from the trailer itself, thus falling under the plain view doctrine, there is no merit to this claim as presented by the appellant.
For the foregoing reasons, it is the opinion of this Court that the decision of the trial court should be affirmed in all respects.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.