## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 95-CA-01130-SCT

*CLEMMIE LEE WALKER AND SUE DAVIDSON*

*v.*

*MISSISSIPPI BUREAU OF NARCOTICS*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/95 |
| TRIAL JUDGE: | HON. HENRY LAFAYETTE LACKEY |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JAMES D. MINOR |
| ATTORNEY FOR APPELLEE: | MARY JANE LEMON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/2/97 |
| MOTION FOR REHEARING FILED: | 10/17/97 |
| MANDATE ISSUED: | 12/30/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

This is an appeal from an order of the Calhoun County Circuit Court which denied the appellants' complaint to set aside the default judgment of a criminal forfeiture of $42,905.

On August, 28, 1988, James Willie (J.W.) Walker was arrested at a roadblock, near his residence, on Highway 8 West in Calhoun City. As a result of his arrest and other information received by agents of the Mississippi Bureau of Narcotics and local law enforcement officers, a search warrant was obtained for the residence of J.W. Walker.

During the early morning of Sunday, August 28, 1988, the search warrant was executed at J.W. Walker's residence on Highway 8 West in Calhoun City. Upon entering the home, law enforcement officers found Glenda Sue Davidson (Sue), sister of J. W., asleep on a couch and two minor children. The search of the home resulted in the discovery of illegal drugs and alcohol. Also, a white garbage bag containing $42,905 in mostly $20 and $10 denominations, as well, some $5 and $100

denominations were found. The garbage bag was found in a bedroom closet in the belongings of Sue.

Sue denied any knowledge or ownership of the garbage bag of cash. She signed a note denying ownership and stated that her only cash was that in her purse. At approximately 7:00 a.m., Clemmie Walker, brother of Sue and J.W., came to the house and found officers still investigating. Clemmie is the actual owner of the house that had been searched, however, Clemmie had never lived in the house. Clemmie and Sue discussed the possibility of the cash being forfeited, however, neither Sue nor Clemmie informed law enforcement officers that any cash found in the garbage bag was theirs and not J.W.'s.

On November 8, 1988, a petition for forfeiture was filed in the Calhoun County Circuit Court. On December 7, 1988, J.W. was served with a summons and petition for forfeiture as the owner and person in possession of the $42,905. Notice was not given to either Sue or Clemmie. On March 31, 1989, a default judgment was entered and the $42,905 was forfeited to the Mississippi Bureau of Narcotics.

On July 17, 1992, appellants Sue Davidson and Clemmie Walker filed a complaint alleging that because each was not served with a petition for forfeiture, the default judgment is void. Clemmie claims that $10,000 of the total found is his, and Sue claims the remainder. The appellants contend that they should have received notice of the forfeiture proceeding pursuant to Miss. Code Ann. § 41-29-177. Appellee, the Bureau of Narcotics, contend that the statute does not require summons and notice be given to the appellants.

On September 29, 1995, Calhoun County Circuit Judge Henry L. Lackey, entered an order which denied the appellants' complaint to set aside the default judgment. On October 24, 1995, the appellants filed this appeal.

Miss. Code Ann. § 41-29-177 does not require summons and notice of forfeiture action be given the appellants. Neither appellant is protected by the categories provided in the statute, and therefore actual service of notice is unnecessary. Therefore, each appellant fails to meet the standing requirement to challenge the forfeiture.

Aggrieved by the lower court's disposition, the appellants appeal the following issues:

**I. WHETHER THE LOWER COURT ERRED WHEN IT DENIED SUE DAVIDSON'S COMPLAINT TO SET ASIDE THE FORFEITURE?**

**II. WHETHER THE LOWER COURT ERRED WHEN IT DENIED CLEMMIE WALKER'S COMPLAINT TO SET ASIDE THE FORFEITURE?**

## STATEMENT OF THE FACTS

On August 28, 1988, James Willie Walker was arrested at a roadblock close to what law enforcement officers believed to be his home. Following his arrest, law enforcement officers obtained a search warrant for his residence and in conducting the search found illegal drugs and alcohol. J.W. was convicted and this Court affirmed his conviction in *Walker v. State*, 564 So. 2d 404 (Miss. 1990).

Additionally, J.W. had previously been arrested for drug possession in 1987 at the same home. Again,

J.W. was convicted and his sentence was affirmed by this Court in *Walker v. State*, 587 So. 2d 300 (Miss. 1991). Following J.W.'s arrest at the home in 1987, forfeiture proceedings were brought against money, jewelry and money found in the home.

The August 28, 1988, search is the subject of the case at bar. Upon entering the home, law enforcement officers found Glenda Sue Davidson, a resident of Memphis, Tennessee, asleep on a couch and two minor children. Officers found a white garbage bag which contained $42,905 in cash, in a bedroom closet in one of Sue's suitcases. Mississippi Bureau of Narcotics Master Sergeant Charlie McVay and Calhoun County Sheriff Leslie Pollan questioned Sue regarding the ownership of the cash. Afterward, Sheriff Pollan wrote a note for Sue stating that she had no knowledge of the cash in her belongings, that the only money she had was that in her purse, that she was staying with her brother, J.W., that she had not been threatened or harmed and she signed the statement voluntarily. Sue admitted that she did in fact sign the statement.

On November 8, 1988, the Mississippi Bureau of Narcotics filed a petition for forfeiture of the $42,905 discovered in the search. On December 7, 1988, J.W. was served with a summons and petition for forfeiture. J.W. never attempted to defend an interest in the money, and a default judgment was entered on March 21, 1989. On April 25, 1989, the $42,905 was distributed to the participating law enforcement agencies according to statute.

On July 17, 1992, Glenda Sue Davidson and Clemmie Walker filed a complaint against the Bureau of Narcotics, wherein they claim that they should have been made parties to the forfeiture proceedings pursuant to Miss. Code Ann. § 41-29-177. On August 17, 1995, the Calhoun County Circuit Court held an evidentiary hearing to consider the claims on the merits.

James Willie Walker testified that he had lived in Calhoun City all of his life except for a short period when he lived in Memphis, Tennessee. J.W. stated he had twice been convicted of felonies which occurred when he lived in Memphis, Tennessee. J.W. stated that he had lived with his mother, before her death in 1985, at the house in which the drugs and cash were found. However, the house was purchased by his brother, Clemmie. Although he could not remember specifically, J.W. stated that it had been some time since he last stayed at the house in which the money and drugs were found, although he admitted that he had left old clothes at the house. J.W. stated that when he was arrested at the roadblock he had just left his mothers old house. In fact, he stated, that prior to arrest, he intended to spend Saturday night in the house. J.W. denied that he lived in the house in August, 1988. J.W. admitted he paid the phone and electric bills for the house and that these bills were listed in his name. J.W. testified that he continued to live at his mother's house after her death in 1985, but that he later began to stay in town with his girlfriend more than he stayed at his mother's house. J.W. admitted that in August, 1987, the Bureau of Narcotics conducted a search of his mother's home and arrested him for drug possession, and instituted forfeiture proceedings against jewelry, guns and money found in the home. Further, J.W. admitted that he kept a key to the house even while he lived in Memphis.

Clemmie Walker testified that James Willie Walker and Glenda Sue Davidson are his brother and sister, respectively. Clemmie stated that he was called and informed of J.W.'s arrest on August 28, 1988. Clemmie stated that he is the actual owner of the house that was searched on August 28, 1988. However, Clemmie stated that he never lived in that home, rather he lived in another house

approximately 14 miles away. Clemmie testified that he had purchased the house in 1985 from his mother, before she died, so that the home would remain in the family. Clemmie stated that the house is used by different family members when they visit Calhoun City. Clemmie stated that $10,000 of the seized currency was his and that he never received a notice of the forfeiture. Clemmie stated he contacted an attorney, Richard Burdine, who was handling J.W.'s criminal defense, but that Burdine never did file anything. Later, Clemmie contacted Jimmy Shelton from Tupelo, who also did not pursue the matter. Finally, Clemmie and Sue contacted their present attorney, James D. Minor, from Oxford, who filed suit in 1992. Clemmie stated that he did not pay for the electricity and phone for his mother's house during August, 1988. Clemmie stated that he was called the morning of the search but that he did not arrive at the house until 6 or 7:00 a.m. When he arrived, several law enforcement officers were still at the house, but Clemmie did not inform the officers of his ownership interest nor did he object to the officers seizing the cash.

Clemmie stated another sister, Peggy Gail Gordon, died in April, 1988 and that she had lived in Calhoun County, with her four children. Clemmie stated that after Peggy had died, he and Sue planned to buy Peggy's house for her surviving children. However, Clemmie did not know the name of the realtor handling the transaction, the amount of the purchase price or any attorney involved in the transaction. Instead, another sister, Lois, was to "look after all of those details." However, Lois did not testify at this hearing to substantiate this plan. Clemmie stated that he had taken the $10,000 out of his credit union on the Monday or Tuesday before the seizure, and that he had given the money to Sue on Friday to help purchase Peggy's house. Clemmie testified that he gave Sue the cash in $20 and $100 denominations. Clemmie stated that he did not know what Sue did with the money afterward.

Glenda Sue Davidson testified that she lived in Memphis, Tennessee. She went to Calhoun City in August, 1988, to inquire into buying Peggy's house for her surviving children. Sue stated that Lois was to handle the purchase of the house, but that the house was never purchased. Sue testified that she kept the money in one of her suitcases with her clothes. She claims all but $10,000 of the seized money. When asked if it is normal to buy a house on a weekend, Sue stated that she didn't know anything about it, including the name of the lawyer and realtor handling the transaction. She stated that the money was mostly in $20 and $100 bill denominations.

Sue stated that she was unemployed in August, 1988, but that she was receiving unemployment benefits and had received severance and retirement benefits from Ply, Incorporated of Memphis, Tennessee. Sue stated that she and her son received an aggregate of $80,000 from different insurance policies following the death of her husband in 1985, and that it was from the insurance proceeds that she had $32,905 to help purchase her deceased sister's house. After her husbands death in 1985, most of the money was ordered to be placed in a bank until her son reached 18 years old. Although she could not remember specifically, Sue stated that she must have withdrawn the funds after July, 1987, just after her son turned 18, therefore she contends that she carried the cash for over a year.

Sue testified that during the early morning hours of Sunday, August 28, 1988, she awoke and saw several law enforcement officers standing in the house. They searched throughout all of her belongings and would not let her change clothes, as she was still wearing her pajamas. She stated that after the officers found the cash in her suitcase, they discussed the money. Sue stated that she signed the paper because she was afraid.

Well, he had told me, he had took me in the back and told me a lot of stuff like if I didn't do this or do that, what they were going to do to; so after this the sheriff drew up some papers; and they took embarrass [sic] to another room; and we all was sitting on the floor; and he put some papers up saying that the money wasn't mine. He got my social security number, my driver's license number, and all that stuff; and he asked me to sign it.

Sue admitted that she did sign the statement and that the officers did not have their guns drawn, nor was she beaten or mistreated. Although, she refused to say she signed the statement voluntarily, she admitted she was not forced. Sue stated she knew when the money was seized that it would be forfeited. She stated she felt threatened by the officers, "because when somebody tells you things they're going to do to you, that's a threat, or they can do to you." That statement is the most specific her testimony is in regard to police threats. Finally, she stated that she did not pay Burdine anything to represent her in the forfeiture proceeding.

Charles McVay testified that he first met J.W. in August, 1987, when McVay executed a search warrant of J.W.'s residence. J.W. was arrested for possession of illegal drugs found in the house. McVay stated he was aware that items were seized from the 1987 arrest and forfeiture proceedings were brought. McVay stated that on August 28, 1988, he executed another search warrant of J.W.'s residence. When the August, 1987, search warrant was executed, the house was a small frame house. In August, 1988, the carport had been enclosed and a three car garage added and renovations made inside. While in custody, J.W. stated that he had spent approximately $13,000 renovating the house.

Upon executing the search in August, 1988, McVay and the other officers found Sue and two minor children. During this search a white garbage bag containing $42,905 in cash was found in a suitcase, which Sue identified as hers. After the discovery, McVay stated he interviewed and took a statement from Sue. Dominations of money was mostly $20's, $10's and some $5's and $100's.

McVay stated that neither Sue nor Clemmie ever approached him and stated that any part of the money was theirs. McVay identified subpoenaed phone records which show that from July, 1986 until June, 1989, the phone listing and billing be to J.W. Walker. Also, the phone records show extensive long distance calling during 1988 when J.W. contends he lived in Memphis.

On September 24, 1995, Judge Lackey entered an order and denied the appellants' complaint. Appellants filed this appeal on October 24, 1995.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE LOWER COURT ERRED WHEN IT DENIED SUE DAVIDSON'S COMPLAINT TO SET ASIDE THE FORFEITURE?

Glenda Sue Davidson contends that the forfeiture proceeding should be set aside because the Bureau of Narcotics failed to provide her statutory notice of the proceeding. Whereas, the Bureau of Narcotics contends statutory notice was not required to be given to Sue, and therefore she lacks standing to challenge the default judgment. Miss. Code Ann. § 41-29-177 does not provide a statute of limitations for one to contest the failure to provide notice of the forfeiture proceeding.

Miss. Code Ann. § 41-29-177 (2) titled "Procedure for disposition of seized property; petition of

forfeiture; inquiry into ownership; failure to discover owner" states:

> (2) A petition for forfeiture shall be filed in the name of the State of Mississippi, the county or the municipality and may be filed in the county in which the seizure is made, the county in which the criminal prosecution is brought or the county in which the owner of the seized property is found. Forfeiture proceedings may be brought in the circuit court or the county court if a county court exists in the county and the value of the seized property is within the jurisdictional limits of the county court as set forth in Section 9-9-21, Mississippi Code of 1972. A copy of such petition shall be served upon the following persons by service of process in the same manner as in civil cases:

> (a) The owner of the property, if address is known;

> (b) Any secured party who has registered his lien or filed a financing statement as provided by law...

> (c) Any other bona fide lienholder ...

> (d) Any holder of a mortgage ... if the property is real estate; and

> (e) Any person in possession of property subject to forfeiture at the time that it was seized.

The Bureau of Narcotics does not contest that the $42,905 was found within Sue's belongings. However, the Bureau contends that Sue was not in possession of the money, because she denied ownership and knowledge of the money.

Sue contends that her signed statement does waive her right to notice of the forfeiture proceeding. Further, she states that she felt threatened by the officers and therefore signed the statement. However, her logic is faulty. Sue admitted she was not mistreated and that Sheriff Pollan asked her to sign her statement. Her allegations of the officers threatening "do this and do that" are not specific and do not indicate coercion.

Not until over three (3) years after the default judgment did Sue attempt to set aside the proceeding. Sue testified that she was informed by the law enforcement officers that the money seized would be subject to forfeiture proceedings, thus she knew on August 28, 1988, of the possible forfeiture proceeding. It is important to note that even after she signed the statement, she still had the opportunity to recant her statement on August 28, 1988. Her brother, Clemmie, came over a few hours after the search began, and she testified that they discussed the forfeiture. We do not believe that a person that actually owned a bag which contained $42,905 in cash is unwilling to speak up and claim ownership of the bag and proclaim that the cash is not linked to illegal drug activity. The appellants did not present any other witnesses at the hearing to support their arguments other than themselves and J.W.

Sue's signed statement shows she claimed no ownership of the money, and her denial of any knowledge of the money shows her lack of possession, therefore § 41-29-177 did not require that a copy of the forfeiture petition be served upon Sue. Sue has failed to show that she has standing to question the default judgment. Although the burden is on the Bureau to show that the property is subject to forfeiture, Sue must first show that she has standing to challenge the judgment.

Although the issue of whether the denial of ownership or knowledge of property at the time of seizure precludes an individual from later contesting the forfeiture of the seized property has not been addressed by this Court, a similar issue has been decided. "It has long been the law in this state that if a person denies ownership or possession of property, he later has no standing to complain that the search was unlawful." *Waldrop v. State*, 544 So. 2d 834, 837 (Miss. 1989); *Watkins v. State*, 262 So. 2d 422, 423-24 (Miss. 1972); *Ball v. State*, 194 So. 2d 502, 503 (Miss. 1967). This Court extends the *Waldrop* rationale to the issue presented today, Sue cannot deny ownership and knowledge of the seized currency, and after the passage of four years from the date of seizure can she claim that the forfeiture proceedings were void because she did not receive statutory notice. Her denial effectually stated that she did not own or possess the seized money and pursuant to § 41-29-177, one not in possession or the owner of seized property is not entitled to statutory notice.

Further, Sue admitted that she was informed by law enforcement officers that the seized currency would be subject to forfeiture proceedings. And, after learning of the possible forfeiture proceedings neither Sue nor Clemmie expressed their alleged ownership interest to law enforcement officers. Miss. Code Ann. § 41-29-177 is intended to give notice of the forfeiture proceedings to persons with an interest in the seized property. Here, Sue actually knew of the possible forfeiture proceeding, therefore had actual notice of the impending forfeiture. However, Sue remained silent as to her interest in the seized property. No error can be shown in the Bureau's failure to notify of the forfeiture proceeding following Sue's denial of any knowledge, ownership or involvement with the seized currency. For the above reasons, Sue's argument is without merit.

## II. WHETHER THE LOWER COURT ERRED WHEN IT DENIED CLEMMIE WALKER'S COMPLAINT TO SET ASIDE THE FORFEITURE?

Clemmie Walker contends he should have received statutory notice of the forfeiture proceeding because he owned the building wherein the money was seized. However, a review of § 41-29-177 does not indicate that the owner of real property should be notified of the forfeiture proceeding of personal property seized from the real property merely because of an ownership interest in the real property. In a similar case, the claimant, who did own the real property on which the cash was seized, did not testify or offer any ownership interest in the seized currency. *United States v. $24,000 in U. S. Currency*, 722 F. Supp. 1386 (N.D. Miss. 1989), *aff'd*, 902 F. 2d 956 (5th Cir. 1990), *cert. denied Hamilton v. United States*, 498 U.S. 1024 (1991). The district court held that mere ownership of the real property on which the seized property is found is insufficient to confer standing to challenge the forfeiture proceeding. *Id*. at 1390.

The facts of the case *sub judice* do not indicate that Clemmie was in possession or had dominion and control of the house wherein the property was seized. Although he is the record owner, Clemmie testified that he never lived in the house, and that the house was primarily used by J.W. and by other family members when they visited Calhoun City. As previously discussed, J.W. held dominion, control and possession of the house, as shown through his payment of electric and telephone bills and his payment for the costs of renovation to the house. Therefore, the mere ownership of the home in which the currency was seized is insufficient to confer standing to challenge the forfeiture proceeding. Therefore, the Bureau of Narcotics was not required by § 41-29-177 to notify Clemmie of the forfeiture proceedings.

As discussed above, Miss. Code Ann. § 41-29-177 is intended to insure that persons with an ownership interest in seized property are afforded an opportunity to protect their interest in forfeiture proceedings. However, Clemmie testified that he actually knew of the seizure within hours of the property seizure, and that he and Sue discussed the possible forfeiture. He went to the search site and saw officers conducting their investigation, but Clemmie did not report his ownership interest in $10,000 of the seized funds, and at no time did he bring his claim to the attention of law enforcement personnel. Like his sister, Clemmie waited three years after the default judgment and almost four years after the actual seizure before he brought a suit to recover the seized currency. Clemmie had actual notice of the forfeiture proceeding, therefore his contention that the failure to provide statutory notice prejudiced his interests is without merit. This argument is without merit.

## CONCLUSION

Glenda Sue Davidson and Clemmie Walker challenge the default judgment which granted a forfeiture of $42,905 to the Mississippi Bureau of Narcotics. Although, the appellants admitted that they had actual notice of the seizure, they waited more than three years after the entry of the default judgment and more than four years after they each knew that the money had been seized for forfeiture purposes to express an ownership interest in the seized currency. The appellants contend that § 41-29-177 requires the Bureau to give statutory notice to each of the appellants. Although the money was found in Sue's suitcase, she denied any knowledge or ownership of the money. Sue cannot be found to be in possession of the property after she stated that she did not possess the property. Sue lacks standing to challenge the default judgment because she does fall into one of the categories mandating notice of the forfeiture proceeding be served. Finally, no part of the applicable statute pertains to Clemmie, and he too lacks standing.

**AFFIRMED.**

**PRATHER, P.J., PITTMAN, BANKS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

    **McRAE, JUSTICE, DISSENTING:**

While I agree that Glenda Sue Davidson's attempt to set aside the forfeiture proceeding must fail, I disagree with the majority as to the statutory notice that should have been given to Clemmie Walker, the actual owner of the building where property was seized. Accordingly, I dissent.

The pertinent statute reads, in part:

> A petition for forfeiture shall be filed promptly in the name of the Sate of Mississippi, the county or the municipality and may be filed in the county in which the seizure is made, the county in which the criminal prosecution is brought or the county in which the owner of the seized property is found.. . .A copy of such petition shall be served upon the following persons

by service of process in the same manner as in civil cases: (a) The owner of the property, if address is known;. . .

Miss. Code Ann. § 41-29-177(2)(1993). The failure of law enforcement officers to simply give notice to Walker constitutes error. The statute is clear that Walker should have been given notice of the forfeiture proceedings by service of process. In a civil case, when a party does not receive statutory notice of filing of a lawsuit, the lawsuit is considered not filed. According to Miss. Code Ann. § 41-29-177, the same analysis must apply here, because petitions for forfeiture must be served just as process in a civil case.

The majority also errs by dismissing Walker's right to notice and relying on Walker's statement that he knew of the seizure. What Walker knew was that a warrant had been issued and that possession of the money could and would be used as a basis for charges. For Walker to come forward at that point in time and declare that the money was his would have been ludicrous. The majority's suggestion that someone who owned a bag containing $42,905 in cash should be willing to claim it and say that it is not linked to illegal activity is implausible at best, since doing so would probably subject that person to being charged with a crime.

Seizure of an individual's property is a very serious matter, and the statutory rules of notice should be followed strictly before a seizure can occur. Failure to give an individual the appropriate statutory notice of property that was taken out of the individual's house is tantamount to awarding a default judgment to the State. As the majority states, the burden is on the State to prove its case. Since the forfeiture of property is highly penal in nature, the State must be required to adhere to statutory guidelines, crossing all t's and dotting all i's. Because the State had knowledge that the property in this case was in a house owned by Walker, the State was required to give Clemmie Walker notice of forfeiture proceedings. The State failed to provide Walker his statutory notice and should be held accountable for its failure to do so.

**SULLIVAN, P.J., JOINS THIS OPINION.**