# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01217-COA

**CALVIN KEONTREY ARMSTRONG A/K/A**        **APPELLANT**
**CALVIN KEONTRAY ARMSTRONG A/K/A**
**CALVIN ARMSTRONG**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/24/2024 |
| TRIAL JUDGE: | HON. JAMES McCLURE III |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | JAMES STEPHEN HALE JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/31/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Calvin Armstrong was indicted by a Yalobusha County grand jury on June 20, 2023, and charged with one count of sexual battery, one count of possession of methamphetamine in violation of Mississippi Code Annotated section 41-29-139(c) (Rev. 2018), and one count of possession of thirty grams or more of cocaine with intent to transfer in violation of section 41-29-139(a)(1) and (f)(2)(A). The sexual battery charge was remanded to the file without prejudice, and Armstrong was tried and convicted on the other two charges. The Yalobusha County Circuit Court sentenced Armstrong to serve ten years in the custody of the

Mississippi Department of Corrections followed by ten years of post-release supervision (PRS) for the cocaine conviction, and the court sentenced him to three years of PRS for the methamphetamine conviction. On appeal, Armstrong contends that the trial court erred by denying his motion to suppress the evidence that was found pursuant to two search warrants. Having reviewed the record, considered the arguments of the parties, and applied the relevant precedent, we affirm Armstrong's convictions and sentences.

## FACTS

¶2. On the morning of June 16, 2022, Deputy Chad Caffrey with the Tate County Sheriff's Department was dispatched to the Arkabutla Fire Station because "a male had been shot in the eye." When Caffrey arrived, first responders were attending to "the male," Armstrong. They determined Armstrong had been cut above his eye and not shot. Armstrong told Caffrey that he had picked up his girlfriend, brought her to his home in Water Valley, Mississippi, and an unidentified person began shooting at him. When Caffrey requested Armstrong's identification, Armstrong produced an ID card, which listed his address as "308 West Lee Street, Water Valley, Mississippi." Caffrey asked Armstrong if that was where he lived, and Armstrong replied, "Yes." Paramedics arrived and transported Armstrong to the hospital.

¶3. On the same day, the Tate County Sheriff's Department contacted the Water Valley Police Department and notified them that they received a report from Markuryion Irby that she had been sexually assaulted at a house in Water Valley. Irby alleged that the sexual

2

assault began in the living room, and then she was forced into the bedroom. Lieutenant Anthony Hernandez with the Water Valley Police Department traveled to Delta Health-Highland Hills Hospital in Senatobia, Mississippi, to interview Irby and obtain her written statement. Unfortunately, Hernandez was unable to secure rape kit results because the hospital's rape kits had expired.

¶4. The next day, Irby and her mother met Hernandez at the Water Valley Police Department to follow him and identify the house where the sexual assault occurred. The residential address for the identified house was "308 West Lee Street, Water Valley, Mississippi." Aneatha Johnson, Armstrong's mother, was the registered owner of the house.

*Premises Search Warrant for Sexual Assault Evidence*

¶5. On the same day that Irby identified the house, Hernandez prepared an affidavit for a search warrant to obtain evidence of the sexual assault. He presented the affidavit and underlying facts and circumstances to the municipal judge. However, the municipal and justice court judge, Judge Howell, added the address in sections two and seven because Hernandez forgot to include it. In section two of the affidavit, Judge Howell wrote the address as *308 West Street*, Water Valley; however, in section seven of the affidavit, and the underlying facts and circumstances document, Judge Howell wrote the address correctly—308 West *Lee* Street, Water Valley. In section three, the affidavit stated that law enforcement sought articles of personal property used during the sexual assault and any personal property left behind afterward. In section four, the affidavit specified that

3

investigators sought DNA on the bed linens and Irby's keys, which she had left on the bedroom dresser. Hernandez signed the affidavit that the judge had completed.

¶6.     Hernandez then prepared the search warrant and swore before Judge Howell that the address where the alleged sexual assault occurred was "308 West Lee Street" in Water Valley. Consistent with that sworn statement, the search warrant correctly listed the residential address as 308 West Lee Street, Water Valley. Judge Howell authorized the search warrant at approximately 3:45 p.m.

¶7.     Law enforcement searched the home around 6:01 p.m. Following Irby's description of the sexual assault location, officers first went to the bedroom. There, the officers collected two pillowcases, one cream-colored fitted sheet, and one flat bed sheet. Officers also searched for Irby's keys. Because they did not find them in the bedroom, they moved the search to the living room, where the alleged sexual assault started. On the living room coffee table, in plain view, officers identified a small plastic bag of what appeared to be marijuana. Around the same time, officers found a shoebox on top of a storage box between the living room and back bedroom's entrance. Inside the shoebox, officers found $99 and what appeared to be crack cocaine. After finding money and what appeared to be illegal drugs inside the shoebox, Hernandez stopped the search, secured the outside of the house, and left to obtain a second search warrant.

*Premises Search Warrant for Controlled Substances and Paraphernalia*

¶8.     At approximately 8:47 p.m., Judge Howell issued a second search warrant that

4

allowed the officers to search for controlled substances or paraphernalia at 308 West Lee Street. Officers executed it at 9:09 p.m. This warrant correctly listed the residential address as "308 West Lee Street, Water Valley."

¶9. When officers executed the second search warrant, they found what appeared to be six ecstasy tablets and a safe that contained a gallon-size plastic bag weighing approximately 237 grams of what appeared to be cocaine, and $5,259 in United States currency.[1]

¶10. Later, the district attorney filed a petition for forfeiture of the $5,259 found in the safe to which Armstrong filed a response, asserting that the money was his.

¶11. On June 20, 2022, Aneatha brought her son, Armstrong, to the police department for questioning during which officers asked Armstrong for his address. Armstrong denied living at 308 West Lee Street in Water Valley and instead told officers that he lived at 701 Airways Acres Drive in Coffeeville. However, officers determined that address did not exist. Armstrong later claimed during booking that he lived with his "baby's mamma" at a Rolling Hills residence.

*Court Proceedings*

¶12. Armstrong was indicted on June 20, 2023, and charged with one count of sexual battery (Count 1), one count of methamphetamine possession (more than two but less than ten dosage units) in violation of section 41-29-139(c) (Count 2), and one count of possession of thirty grams or more of cocaine with intent to transfer in violation of section 41-29-

---

[1] Law enforcement enlisted the aid of the fire department in opening the safe.

139(a)(1) and (f)(2)(A) (Count 3). Aneatha Johnson was co-indicted for the second and third counts.

¶13.    On May 10, 2024, Armstrong filed a motion to suppress the evidence collected through the search warrants, alleging that the first warrant failed to adequately particularize the items to be seized and that there was no probable cause for its issuance because false and unreliable information was included in the underlying facts and circumstances.  He also alleged that the items discovered during the execution of the first warrant were outside the scope of the warrant and unlawfully used as a basis to procure the second warrant.  On July 30, 2024, the court held a hearing on Armstrong's motion to suppress.  Lieutenant Anthony Hernandez testified about the issuance and execution of the search warrants.  After hearing arguments from both sides and reviewing the evidence, the circuit court ruled that the warrant concerning the search for the drugs was valid, and the evidence obtained from both searches was admissible.

¶14.    On September 16, 2024, a jury trial was held on the drug charges against Armstrong.[2] The following witnesses testified, including six for the State: Chad Caffrey, Anthony Hernandez, Toby Britt, Charlotte Cothern, Michael Walton, Jason Mangrum, and Aneatha

---

[2]  On September 13, 2024, the State filed a motion to remand the sexual battery charge (Count 1) to the files after determining that Irby was "not emotionally stable enough to offer testimony and she did not wish to participate in" Armstrong's prosecution.  Thus, on September 16, 2024, the court issued an order to remand without prejudice.  Also, the court issued an order to remand without prejudice counts two and three against Aneatha Johnson.

Johnson testified for Armstrong.

¶15. Deputy Caffrey testified that he first met Armstrong at Arkabutla Fire Station on June 16, 2022, the date of the alleged sexual assault. Caffrey was the responding officer after receiving a report that Armstrong had been shot in the eye. Armstrong told Caffrey that the shooting occurred at his home in Water Valley. Further, Caffrey testified that Armstrong's identification card listed his address as 308 West Lee Street, Water Valley, and Armstrong verbally confirmed that this was the address where he lived.

¶16. Next, Hernandez, a lieutenant with the Water Valley Police Department, testified that Irby identified the location of the sexual assault as 308 West Lee Street in Water Valley. He also testified that the same address was on the underlying affidavit for the first and second search warrants. In executing the first warrant for evidence of a sexual assault, the officers searched for sheets, pillowcases, and Irby's keys. When they did not find Irby's keys on the bedroom dresser or anywhere in the bedroom, they continued the search in the living room. They noticed marijuana in plain view on the coffee table. Around the same time, officers noticed a shoebox on top of a blue storage box, which was located between the living room and the back bedroom entrance. Looking inside the shoebox for keys, officers found $99 and what appeared to be crack cocaine.

¶17. Britt, a patrolman with the Water Valley Police Department and a member of the investigation team, testified to the events that occurred while executing the search warrants, including the evidence found. Britt confirmed that the search occurred at 308 West Lee

7

Street in Water Valley.

¶18. Cothern was accepted as an expert witness and forensic scientist specializing in drug analysis with the Mississippi Forensics Laboratory in Batesville, Mississippi. Cothern identified the substances obtained from 308 West Lee Street as 224.60 grams of cocaine and six methamphetamine pills.

¶19. Walton, Tax Assessor for Yalobusha County, testified that Aneatha Johnson was the owner of 308 West Lee Street in Water Valley.

¶20. Finally, Jason Mangrum, Chief of Police with the Water Valley Police Department, testified that the money found in the safe was seized, and he explained the civil forfeiture process. Mangrum stated that when officers believe that money or items are closely connected to narcotics, they must give a notice of seizure to the person suspected of possessing the money. Officers fill out a supporting affidavit and obtain a seizure warrant, which has to be signed by a circuit court judge. Once signed, the money is placed in a designated bank account to be held during the process. Finally, the warrant is sent to the district attorney's office, which handles the court filings and proceedings for the funds to be forfeited to the State. Mangrum confirmed that Armstrong was contesting the seizure and forfeiture process, claiming the money belonged to him.

¶21. Armstrong's only witness was his mother, Aneatha Johnson. She testified that although the house at 308 West Lee Street was unoccupied, the utilities remained turned on because it was a family house. She stated that her three adult children, including Armstrong,

had keys to the house. Aneatha testified that James Johnson, another one of her children with keys to the house, was currently incarcerated for the sale of cocaine and methamphetamine. Thus, she testified that she did not know who owned the drugs. However, on cross-examination, Aneatha admitted that though James was aware that he was going to jail for five years, day for day, he never claimed ownership of the drugs attributed to Armstrong.

¶22.    After Aneatha testified, Armstrong rested. The State called no rebuttal witnesses, and the case was submitted to the jury. The jury rendered a verdict finding Armstrong guilty of Counts 1, 2 and 3. The court noted this on the record and clarified that a verdict on Count 1 for sexual battery did not apply because they were just proceeding on Counts 2 and 3.

¶23.    Armstrong's counsel immediately moved ore tenus for a judgment notwithstanding the verdict (JNOV), alleging that there was insufficient evidence to prove that Armstrong possessed the drugs and that no reasonable juror could have found him guilty based on the testimony put forth at trial. Finding no merit, the court denied the motion for JNOV. Armstrong later filed a written motion for a JNOV or a new trial on September 26, 2024. He again alleged that the State's evidence was insufficient to meet its burden and that the facts did not support the verdict. He further claimed that the State's only evidentiary support was that the controlled substances were found at an address where he allegedly lived and that this contradicted the court's order from July 30, 2024, which found Armstrong lacked standing to contest the search because he disclaimed residency. Further, Armstrong contended that it was improper for the jury to find him guilty of count 1, sexual battery, when that charge

9

was remanded to the files prior to trial and not submitted to the jury. Finally, Armstrong alleged that the jury did not submit verdicts in the proper form, as instructed.[3]

¶24. On October 10, 2024, the court conducted a sentencing hearing. For count two, Armstrong was sentenced to serve a ten-year term in the custody of the Mississippi Department of Corrections, followed by a term of ten years of PRS (five years reporting and five years non-reporting). For count three, Armstrong was sentenced to serve "zero (0) years incarceration" with three years of reporting PRS.

¶25. Armstrong appeals the denial of his motion to suppress, arguing that the evidence obtained based on the second warrant should have been suppressed because it resulted from the first warrant, which he argues was void because the underlying affidavit contained a different address than the search warrant. He further contends that he had a reasonable expectation of privacy in the home, that the first warrant was invalid, and that the second warrant must, therefore, be found void, making the evidence gathered inadmissible as fruit of the poisonous tree.

**STANDARD OF REVIEW**

¶26. "The Mississippi Supreme Court has adopted a mixed standard of review for the denial of a motion to suppress involving the Fourth Amendment." *Robinson v. State*, 422 So. 3d 53, 57 (¶13) (Miss. Ct. App. 2025) (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20)

---

[3] This was not raised on appeal, and any question about the sexual battery "verdict" is procedurally barred.

(Miss. 2006)). "Determinations of [reasonable suspicion and] probable cause should be reviewed de novo." *Id*. "However, [the reviewing court is] bound by the trial judge's findings as to the underlying 'historical facts' unless those findings are 'clearly erroneous.'" *Id*. (citing *Holloway v. State*, 282 So. 3d 537, 541-42 (¶13) (Miss. Ct. App. 2019)). The admission or exclusion of evidence is reviewed for an abuse of discretion. *Id*. (quoting *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010)). "Whether a defendant has standing to challenge a seizure is a question of law; therefore, we address this issue de novo." *Tullos v. State*, 287 So. 3d 1014, 1017 (¶12) (Miss. Ct. App. 2019) (quoting *Brown v. State*, 19 So. 3d 85, 89 (¶7) (Miss. Ct. App. 2008)).

**DISCUSSION**

I.    **Armstrong lacked standing to challenge the search warrants.**

¶27.    Armstrong challenges the validity of the search warrants and the admissibility of the resulting evidence. The State responds that he has no standing to make such a challenge. Armstrong claims that he has standing under the Fourth Amendment because he had a reasonable expectation of privacy in the home, relying on the State's argument at trial that he either lived at 308 West Lee Street or at least held a possessory interest in the house.

¶28.    Under the United States Constitution, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; *Tullos*, 287 So. 3d at 1017 (¶14). But "Fourth Amendment rights are personal rights and may not be asserted vicariously." *Id*.

11

Article 3, Section 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search . . . ." Miss. Const. art. 3, §23; *Tullos*, 287 So. 3d at 1017 (¶14). The Mississippi Supreme Court has stated that "Section 23 provides greater protections to citizens than does the United States Constitution and should be liberally construed in favor of individual citizens and strictly construed against the State." *Sutton v. State*, 238 So. 3d 1150, 1155 (¶15) (Miss. 2018). In general, evidence obtained as a result of an unconstitutional search is inadmissible at trial. *Green v. State*, 344 So. 3d 854, 857 (¶12) (Miss. 2022). The exclusionary rule "prohibits 'introduction into evidence of tangible materials seized during an unlawful search.'" *Id*. (quoting *Murray v. United States*, 487 U.S. 533, 536 (1998)). This rule also prohibits "the introduction of *derivative evidence*, both tangible and testimonial, that is, the product of the primary evidence, or that is otherwise acquired as a result of the *unlawful* search, up to the point at which the connection becomes 'so attenuated as to dissipate the taint." *Id*. (second emphasis added) (quoting *Murray*, 487 U.S. at 536-37).

¶29. "If a person denies ownership or possession of property, he later has no standing to complain that the search of it was unlawful." *Tullos*, 287 So. 3d at 1017 (¶14). "We determine the issue of standing after a two-part inquiry: (1) whether the defendant had a subjective expectation of privacy in the place searched; and (2) whether, from society's perspective, that expectation was reasonable." *Nowell v. State*, 246 So. 3d 77, 82-83 (¶20) (Miss. Ct. App. 2018) (quoting *Bankston v. State*, 4 So. 3d 377, 380 (¶13) (Miss. Ct. App.

12

2008)).

¶30.    *Tullos* is an example of a defendant's lack of standing to challenge evidence seized on someone else's property. *Tullos*, 287 So. 3d at 1019 (¶18). In that case, patrol officers from the Mississippi Department of Wildlife, Fisheries and Parks entered private property after hearing shooting. *Id*. at 1015 (¶2). They encountered Tullos, who threw a bag behind a pole as he approached the officers. *Id*. When asked about the contents, Tullos admitted to the officers that the bag contained "meth." *Id*. During a motion to suppress hearing, Tullos contended that any statements or evidence should be suppressed because his grandmother owned the land where the evidence was seized, and his home was located across the street. *Id*. at 1015-16 (¶¶3, 5). The trial court denied his motion, *id*. at 1016 (¶¶6, 11), and on appeal, this Court held that he lacked standing to contest the search because the evidence was seized on land owned by his grandmother, not Tullos. *Id*. at 1019 (¶18).

¶31.    In *Waldrop v. State*, 544 So. 2d 834, 836-37 (Miss. 1989), the defendant lacked standing to suppress evidence when the property owner consented to the search. There, Waldrop, who was charged with manufacturing methamphetamine, admitted he had been in a trailer owned by Mary Lube three hours prior to his arrest. *Id*. at 836. After obtaining Lube's consent to search the trailer, police found five balls of a doughy substance that was later identified as methamphetamine. *Id*. Glassware and other objects used to process the methamphetamine were also found. *Id*. On appeal, Waldrop sought to challenge the validity of the consent Lube gave. *Id.* at 837. The Mississippi Supreme Court held that Waldrop had

13

no standing to assert Lube's rights. *Id.* The Court further found that Lube could consent to the search of her own property. *Id*.

¶32. In the instant case, the trial court made a factual finding as to where Armstrong lived. Armstrong told officers that he did not live at 308 West Lee Street in Water Valley. Further, he provided officers with two alternative addresses: one in Coffeeville, which upon verification did not exist, and another in Rolling Hills, where he claimed to live with his "baby's mamma." Additionally, the tax records demonstrate that the owner of the property was Armstrong's mother, and her testimony corroborates this fact. Despite Armstrong's filing a response to the civil forfeiture claim asserting a possessory interest in the money found at the house, his initial express disclaimer denying residency contradicts that claim.

¶33. From our review of the record, the trial court properly found that Armstrong lacked standing to contest the search of 308 West Lee Street, given that he expressly denied residing at that location. Because he had no standing, his arguments concerning the validity of the warrants fail.

II. **Notwithstanding Armstrong's lack of standing, his arguments concerning the validity of the search warrants have no merit.**

¶34. Even if Armstrong had standing to challenge the search warrants, his arguments fail. Armstrong contends that the search warrant for the sexual battery evidence was defective due to an incorrect address in the supporting affidavit. He further argues that the drugs found pursuant to that warrant and the subsequent search warrant were "fruit of the poisonous tree." We disagree.

14

¶35. Armstrong points to one error in the underlying affidavit submitted for the first search warrant and claims that the entire warrant was defective. In one of two separate places in the form affidavit, the judge who filled in the blanks on the form wrote "308 West Street" as the premises to be searched, instead of "308 West Lee Street." In the second blank requiring an address, the judge put in the correct, full address. "Most technical deficiencies which exist on the face of the warrant will not result in suppression unless it is clear that the defect defeats probable cause or authorizes a general search." *Lawson v. State*, 154 So. 3d 926, 930 (¶7) (Miss. Ct. App. 2015) (quoting William E. Ringel, *Searches & Seizures, Arrests & Confessions* § 7:8 (2d ed. 2014)). A "warrant supported by probable cause and otherwise valid is not void . . . because of . . . a *mere clerical error.*" *Id*. (emphasis added) (citing 68 Am. Jur. 2d *Searches & Seizures* § 211 (2010)). Whether there is probable cause for a search depends on a "practical" and "common-sense" assessment of the "totality of the circumstances." *Holloway*, 282 So. 3d at 543 (¶18) (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31, 238-39 (1983)).

¶36. The Mississippi Supreme Court has held that a magistrate issuing a search warrant may consider both the officer's written affidavit and any supplementary oral testimony. *Petti v. State*, 666 So. 2d 754, 758 (Miss. 1995) (quoting *Lockett v. State*, 517 So. 2d 1317, 1324 (Miss. 1987)). In a factually similar and persuasive case, *State v. Nicholson*, 497 N.W.2d 791, 794 (Wis. Ct. App. 1993), the Wisconsin Supreme Court found that the warrant's recital of the "1512 State Street" address when it should have been "1510 State Street" was a

technical irregularity under the facts. *Id*. Further, it agreed with the trial court that this irregularity did not affect any substantial right of Nicholson. *Id*

¶37. Here, three documents were issued in connection with the first search warrant relating to the sexual battery charge, including the recitation of the underlying facts and circumstances, the officer's affidavit, and the search warrant. It is undisputed that the affidavit, signed by the officer, listed the address twice, in two separate sections. The officer had left the addresses blank, which the court filled in. In section two, the court omitted "Lee" from the street name. However, on the same page, the court put the correct address in section seven. The search warrant itself listed the correct address to be searched: "308 West Lee Street, Water Valley, Mississippi." Further, the underlying facts and circumstances attached to the warrant also listed the correct address. Additionally, Hernandez's testimony under oath before the Judge included the correct address. The totality of the circumstances in this case was more than sufficient for officers to search 308 West Lee Street. Finally, the correct address was searched. Because the search warrant document itself was free of technical deficiencies, and because the totality of the circumstances provided substantial evidence establishing probable cause, we find no error in the court's denial of Armstrong's motion to suppress the evidence that resulted from the initial search.

¶38. Further, because the first search warrant was valid, any evidence or information obtained from it was admissible and could lawfully form the basis for the issuance of the subsequent warrant to search for drugs. The "fruit of the poisonous tree doctrine" only

prohibits the admission of evidence acquired during an unlawful search or other constitutional violation. *Green*, 344 So. 3d at 857 (¶12). For example, "[o]ur supreme court has held that the fruit of the poisonous tree doctrine is defeated where the confession is judged admissible." *Jackson v. State*, 299 So. 3d 823, 836 (¶35) (Miss. Ct. App. 2020) (citing *Wiley v. State*, 449 So. 2d 756, 759-60 (Miss. 1984)). Here, the drugs were seized pursuant to a lawful search warrant, which, in turn, was based on information obtained in the execution of a prior lawful search warrant.

## CONCLUSION

¶39. We hold that the circuit court properly found that Armstrong lacked standing to challenge the search warrants. Even if he had standing, his arguments concerning the validity of the warrants have no merit. Accordingly, we affirm the circuit court's denial of his motion to suppress as well as Armstrong's conviction and sentences.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**